## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-cr-91 (RCL)** |
| | : | |
| CRAIG MICHAEL BINGERT and | : | |
| ISAAC STEVE STURGEON, | : | |
| | : | |
| Defendants. | : | |

### GOVERNMENT'S TRIAL BRIEF

The United States of America respectfully submits this trial brief in advance of the May 15, 2023, trial scheduled before this Court in this case. The brief is divided below into a list of the outstanding motions to be resolved at the pretrial conference; a summary of the charges and elements; a summary of the anticipated government witnesses' testimony; and a discussion of certain evidentiary or other legal issues anticipated to arise.

### OUTSTANDING MOTIONS

The motions that have not yet been ruled on by this Court are: (1) defendants' motion to sever, *see* Dkt. Entry 79; (2) defendants' motion to transfer venue, *see* Dkt. Entry 82; (3) defendants' notices of public authority defenses, *see* Dkt. Entries 84, 88, and the government's opposition to these defenses; (4) defendants' motion to dismiss the misdemeanor counts, *see* Dkt. Entry 87; and (5) the parties' motions *in limine*, *see* Dkt. Entries 132, 133, 137, 138.

### I.      Pretrial Motions

The pending pretrial motions should be denied for the reasons set forth in the government's opposition briefs. In addition, based on the Court's approval of the defendants' jury waiver, as the Court noted at the status conference on May 11, 2023, the defendants' motions to sever and to transfer venue should be denied, as the rationale provided for both motions no longer applies.

II.     **Motions *in Limine***

    A.        **Government's motions *in limine***

The government's motions *in limine* in this case are listed below.  The government filed the two motions on May 1, 2023.

      1.        **Motion *in limine* to limit cross-examination of U.S. Secret Service witnesses**

The government moves to preclude the defendants from inquiring as to Secret Service protocols or details about the nature of Secret Service protective details. Dkt. Entry 137. Defendants state they do not intend to question the witness regarding (1) other buildings where emergencies occur and (2) details about the number and types of agents assigned to protectees. Dkt. Entry 144, at 3. However, defendants oppose the motion to the extent it would preclude them from cross examining the witness about the location of former Vice President Pence. *Id.* at 2. As set out in its reply brief, the government anticipates the Secret Service witness will testify that the Vice President remained within the restricted perimeter during the joint session of Congress – the only relevant issue in this case. Further specifics about his location are irrelevant and pose security concerns. Dkt. Entry 152. Therefore, the Court should grant the government's motion.

      2.        **Motion *in limine* to require a proffer as to the relevance of U.S. Capitol Police witnesses and to bar evidence of a public authority defense**

The government asks the Court to require the defense to proffer the relevancy of the potential testimony of five U.S. Capitol Police officers whom the defendants have subpoenaed to testify at trial. Dkt. Entry 138. If the officers are being subpoenaed solely to testify about the issuance of permits to demonstrate or any other subject relating to a public authority defense, the government is further requesting that defendants be barred from calling these witnesses. *Id.* The defendants oppose this motion and continue to pursue a public authority defense. Dkt. Entry 147.

The motion should be granted for the reasons set out in the government's motion and consistent with this Court's recent ruling in *United States v. Leo Kelly*, No. 21-CR-708.

**B.**      **Defendants' motions *in limine***

Each of the defendants filed one motion *in limine* on May 1, 2023. The motions and the government's responses are summarized below.

1.      **Motion *in limine* to prevent the government from using the following terms: "Riot," "Insurrection," "Mob," "Extremist," "Anti-government" or "Breach"**

Defendant Bingert filed a motion in limine to preclude the government from using certain terms when referring to the events on January 6, 2021. Dkt. Entry 123. The government opposes this motion for many reasons, including that these terms accurately describe the events of January 6 and that the risk of prejudice is extremely low in the context of a bench trial. Dkt. Entry 145. Defendants did not file a reply brief.  The motion should be denied for the reasons set forth in the government's opposition brief.

2.      **Motion *in limine* to preclude admission of montage videos**

Defendant Sturgeon filed a motion in limine to bar the government from presenting two video montages, including a video montage depicting the timeline of the joint session of Congress on January 6 and a montage depicting the timeline of the various breaches of the restricted perimeter and U.S. Capitol building. Dkt. Entry 133. Defendant Bingert moved to join the motion. Dkt. Entry 134. The government only intends to introduce one montage video, the video regarding the congressional proceeding. Any risk of prejudice will be minimal given the context of a bench trial and the montage video will save considerable time at trial. Dkt. Entry 145. The defendants did not file a reply brief in support of their motion. The motion should be denied for the reasons set forth in the government's response in opposition.

## CHARGES AND ELEMENTS

Below, the government outlines the charges and elements for each charge, along with any statements of law relevant to that count.

**I.      Count One – Obstruction of an Official Proceeding and Aiding and Abetting (18 U.S.C. §§ 1512(c)(2), (2)[1]**

Count One of the Superseding Indictment (Dkt. Entry 53) charges defendants with corruptly obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c).  Count One also charges defendants with attempt to obstruct or impede an official proceeding and aiding and abetting others to commit that offense.

**A.      Obstructing An Official Proceeding - Elements and Definitions**

In order to find a defendant guilty of this offense, the government must prove each of the following four elements beyond a reasonable doubt as to each defendant:

1. The defendant attempted to or did obstruct or impede an official proceeding.

2. The defendant acted with the intent to obstruct or impede the official proceeding.

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

4. The defendant acted corruptly.

The term "official proceeding" includes a proceeding before the Congress.  The official proceeding need not be pending or about to be instituted at the time of the offense.  If the official proceeding was not pending or about to be instituted, the government must prove beyond a

---

[1] This instruction has been used in or derived from multiple jury trials, including, but not limited to: *United States v. Sara Carpenter*, 21-cr-305-JEB (ECF No. 95); *United States v. Thomas Robertson*, 21-cr-34-CRC (ECF No. 86); *United States v. Dustin Thompson*, 21-cr-161-RBW (ECF No. 83); *United States v. Anthony Williams*, 21-cr-377-BAH (ECF No. 112); *United States v. Alexander Sheppard*, 21-cr-203-JDB (final instructions not available on ECF).

reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.

As used in this Count, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, all of the evidence may be considered, including what the defendant did, said, or perceived.

To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. [In addition, the First Amendment to the United States Constitution affords people the right to speak, assemble, and petition the Government for grievances. Accordingly, an individual who does no more than lawfully exercise those rights does not act corruptly.] In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.[2] Often, acting corruptly involves

---

[2] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Montgomery*, 578

acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person.[3] While the defendants must act with the intent to obstruct the official proceeding, this need not be their sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct. However, the fact that the defendant's mere presence may have had the unintended effect of obstructing or impeding a proceeding does not establish that the defendant acted with the intent to obstruct or impede that proceeding.

**B.      Attempt to Obstruct an Official Proceeding – Elements**

In Count One, the defendants are also charged with attempting to commit the crime of obstruction of an official proceeding. An attempt to commit obstruction of an official proceeding is a crime even if the defendant did not actually complete the crime of obstruction of an official proceeding.

In order to find a defendant guilty of attempt to commit obstruction of an official proceeding, the government must prove beyond a reasonable doubt each of the following two elements as to each defendant:

1.      That the defendant intended to commit the crime of obstruction of an official proceeding, as defined above.

2.      That the defendant engaged in conduct that constituted a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, the evidence must prove beyond a reasonable

---

F. Supp. 3d 54, 82 (D.D.C. 2021); *United States v. Lonich*, 23 F.4th 881, 902-03 (9th Cir. 2022). For other January 6 trials that have used similar instructions, *see, e.g.*, *United States v. Williams*, No. 21-cr-377 (BAH) (ECF No. 112 at 7), and *United States v. Reffitt*, No. 21-cr-32 (DLF) (ECF No. 119 at 25-29); *United States v. Kelly*, No. 21-cr-708 (RCL) (ECF No. 101 at 10).

[3] This last line, which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *id.* at 352 (Walker, J., concurring), was provided in *United States v. Nordean, et al*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), and *United States v. Kelly*, No. 21-cr-708 (RCL) (ECF No. 101 at 10).

doubt that the defendants' mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, the government must prove that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding.  However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

### C.       Aiding and Abetting Obstruction of an Official Proceeding - Elements

In this case, the government further alleges that the defendants aided and abetted others in committing obstruction of an official proceeding as charged in Count One.  In order to find the defendants guilty of obstruction of an official proceeding because they aided and abetted others in committing this offense, the government must prove beyond a reasonable doubt the following five requirements as to each defendant:

1.      That others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as explained above.

2.      That the defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others.

3.      That the defendant performed an act or acts in furtherance of the offense.

4.      That the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding.

5.      That the defendant did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

To show that the defendants performed an act or acts in furtherance of the offense charged, the government needs to show some affirmative participation by the defendants which at least encouraged others to commit the offense.  That is, that the defendants' act or acts did, in

some way, aid, assist, facilitate, or encourage others to commit the offense.  The defendants' act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendants' act or acts further aid, assist, facilitate, or encourage only one or some parts or phases of the offense.  Also, the defendants' acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, the Court may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for to find the defendant guilty as an aider and abetter. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate himself with the offense, the defendant is not guilty of the obstruction of an official proceeding as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

## II.    Count Two - Assaulting, Resisting, or Impeding Certain Officers While Making Physical Contact with the Officer or Acting with the Intent to Commit Another Felony (18 U.S.C. § 111(a)(1))

Count Two of the Superseding Indictment charges defendants with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with any person assisting officers of the United States who are engaged in the performance of their official duties, in violation of 18 U.S.C.

§ 111(a)(1).  Count Two additionally charges that the defendants, in the commission of such acts, made physical contact with the person or acted with the intent to commit another felony.

### A.    Assaulting, Resisting or Impeding Certain Officers – Elements and Definitions

In order to find the defendants guilty of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a person assisting officers of the United States who was engaged in the performance of his official duties, while making physical contact with the person or acting with the intent to commit another felony, the government must prove the following elements beyond a reasonable doubt as to each defendant:

1.    The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department.

2.    The defendant did such acts forcibly.

3.    The defendant did such acts voluntarily and intentionally.

4.    The person assaulted, resisted, opposed, impeded, intimidated, or interfered with was assisting officers of the United States who were then engaged in the performance of their official duties.

5.    The defendant made physical contact with a person who was assisting officers of the United States who were then engaged in the performance of their official duties or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offenses charged in Count One (Obstruction of an Official Proceeding) and Count Three (Civil Disorder).

The defendants acted "forcibly" if they used force, attempted to use force, or threatened to use force against the officer.  Physical force or contact is sufficient but actual physical contact is not required. The Court may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.[4]

---

[4] *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) (The element of 'forcible' action can be met by a showing of either physical contact with the federal agent, or by such a threat or display

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so. To find that the defendant committed an "assault," you must find beyond a reasonable doubt that the defendant intended to inflict or to threaten injury. Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.[5]

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.

**B.      Aiding and Abetting Assaulting, Resisting or Impeding Certain Officers – Elements and Definitions**

In this case, the government further alleges that the defendants aided and abetted others in committing the offense of assaulting, resisting or impeding certain officers as charged in Count Two.  In order to find the defendants guilty of Count Two because they aided and abetted others in committing this offense, the government must prove beyond a reasonable doubt the following five requirements as to each defendant:

---

of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases).

[5] *United States v. Watts*, 798 F.3d 650, 654 (7th Cir. 2015) ("an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) ("Because Section 111 does not define assault, we have adopted the common law definition of assault as either (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (quotation marks omitted); *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc) (explaining that the crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching, . . . and even the mere threat of such touching"); Criminal Jury Instructions for the District of Columbia, No. 4.100 (2022 ed.) ("Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.").

1.     That others committed charge of assaulting, resisting, or impeding certain officers, as set out above.

2.     That the defendant knew that the offense of assaulting, resisting, or impeding certain officers was going to be committed or was being committed by others.

3.     That the defendant performed an act or acts in furtherance of the offense.

4.     That the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of assaulting, resisting, or impeding certain officers.

5.     That the defendant did that act or acts with the intent that others commit the offense of assaulting, resisting, or impeding certain officers.

## III.   Count Three - Civil Disorder (18 U.S.C. § 231(a)(3))[6]

Count Three of the Superseding Indictment charges defendants with committing or attempting to commit an act to obstruct, impede, or interfere with law enforcement officers lawfully carrying out their official duties incident to a civil disorder, in violation of 18 U.S.C. § 231(a)(3). Count Three also charges defendants with attempting to commit civil disorder.

### A.     Civil Disorder – Elements and Definitions

In order to find each of the defendants guilty of this offense, the Court must find the following three elements beyond a reasonable doubt as to each defendant:

---

[6] *United States v. Thomas Webster*, 21-cr-32-APM, ECF No. 101, at 15-18 (D.D.C. August 2, 2022); *United States v. Guy Wesley Reffitt*, 21-cr-208-DLF, ECF No. 65, at 2, 8-11 (D.D.C. November 24, 2021); *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *United States v. Rupert*, No. 20-cr-104 (D. Minn. Mar. 12, 2021) (ECF No. 81)).

1.     The defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

2.     At the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

3.     The civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia.  It also means commerce wholly within the District of Columbia.

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.

The term "department" includes executive departments.  The Department of Homeland Security, which includes the United States Secret Service, is an executive department.

The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.

For the U.S. Capitol Police and Metropolitan Police Departments on January 6, 2021,

the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.

### B. Attempting to Commit Civil Disorder - Elements

In Count One, the defendants are also charged with attempt to commit the crime of civil disorder. An attempt to commit civil disorder is a crime even if the defendants did not actually complete the crime of civil disorder.

In order to find the defendants guilty of attempt to commit civil disorder, the government must prove beyond a reasonable doubt each of the following two elements as to each defendant:

1. That the defendant intended to commit the crime of civil disorder, as defined above.

2. That the defendant took a substantial step toward committing civil disorder which strongly corroborates or confirms that the defendant intended to commit that crime.

## IV. Count Four - Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1))

Count Four of the Superseding Indictment charges the defendants with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find each of the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

1. That the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2. That the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the elements for Count One.

## V.    Count Five – Disorderly or Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2))

Count Five of the Superseding Indictment charges the defendants with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find each of the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

1.    That the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2.    That the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

3.    That the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person. The terms "knowingly" and "restricted building or grounds" have the same meanings described in the elements for Counts One and Four.

## VI.   Count Six - Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(4))

Count Six of the Superseding Indictment charges defendants with engaging in an act of physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4).

In order to find each defendant guilty of engaging in an act of physical violence in a

14

restricted building or grounds, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  That the defendant engaged in any act of physical violence against any person or property in any restricted building or grounds.

2.  That the defendant did so knowingly.

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual; or damage to, or destruction of, real or personal property. The terms "knowingly" and "restricted building or grounds" have the same meanings described in the elements for Counts One and Four.

## VII.  Count Seven - Obstruction, or Impeding Passage Through or Within, the Capitol Grounds or a Capitol Building (40 U.S.C. § 5104(e)(2))

Count Seven of the Superseding Indictment charges defendants with obstructing, or impeding passage through or within, the Capitol Grounds or a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(E). As set out below, the government will move to dismiss Count Seven prior to the start of trial.

## VIII.  Count Eight - Act of Physical Violence in the Capitol Grounds or Building (40 U.S.C. § 5104(e)(2)(F))

Count Eight of the Superseding Indictment charges defendants with engaging in physical violence in the Capitol Grounds or a Capitol Building, in violation of 40 U.S.C. § 5104(E)(2)(F).

In order to find each of the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

1.      That the defendant engaged in an act of physical violence in any of the United States Capitol Buildings or Grounds.

2.      That the defendant acted willfully and knowingly.

The term "United States Capitol Grounds" includes all squares, reservations, streets, roadways, walks, and other areas as defined on a map entitled "Map showing areas comprising United States Capitol Grounds," dated June 25, 1946, approved by the Architect of the Capitol, and recorded in the Office of the Surveyor of the District of Columbia in book 127, page 8.[7]  The West Front of the United States Capitol, including the Upper West Terrace, is part of the "United States Capitol Grounds" for purposes of this count.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[8]  The term "knowingly" has the same meaning described in the elements for Count One.

## THE GOVERNMENT'S EVIDENCE

### I.      The Government's Witnesses

The government currently intends to call the below witnesses in either its case-in-chief or in rebuttal to the defendants' evidence.

**United States Capitol Police ("USCP") Captain Ronald Ortega** will provide overview testimony regarding the riot that took place at the Capitol on January 6, 2021.  Captain Ortega will identify relevant locations at the Capitol, describe the security measures in place, and explain how the area was restricted by a perimeter of bicycle racks and snow fencing and was closed to the public because of the certification, because of preparations for the presidential inauguration, and

---

[7] Source: (40 U.S.C. § 5102(a)).
[8] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

16

because of COVID-19.   Captain Ortega will describe the progress of the riot on January 6, 2021, and the breaches of relevant points on Capitol grounds —in particular, including the West Front of the U.S. Capitol building where defendants breached the police line before proceeding up the southwest stairs.   Captain Ortega will further explain how the breach of the Capitol caused the Joint Session to go into recess as Congress and the Vice President evacuated and sheltered for hours until it was safe to return.

**MPD Captain David Augustine** will testify about his experience during the breach of the barricades on the southwest front of the U.S. Capitol building. Specifically, Captain Augustine will walk through a portion of his body-worn camera footage and discuss his memory of retreating up through the scaffolding as the rioters advanced toward him and other officers. He will also introduce into evidence other body-worn camera footage depicting the events at the same time and location as his body-worn camera. He will also testify about the establishment of the police line at the top of the southwest stairs, as well as the injuries he suffered on January 6, 2021.

**MPD Officer Juan Gonzalez** will testify about the assault by the defendants at the top of the southwest stairs and will walk through portions of his body-worn camera footage that depicts the same. He will also testify regarding the injury he suffered as a result of the assault by the defendants at the top of the southwest stairs.

**MPD Officer Marc D'Avignon** will testify about his observations of the assault by the defendants at the top of the southwest stairs and will walk through a portion of his body-worn camera footage. Officer D'Avignon will also briefly testify regarding his experience later in the day defending the Lower West Terrace "tunnel." Video will show that both defendants observed the events taking place at the tunnel at or near the time that Officer D'Avignon was defending the entrance to the U.S. Capitol.

**Special Agent Julia Chen** of the Federal Bureau of Investigations ("FBI") will testify about FBI's investigations of the defendants. Special Agent Chen will introduce text messages, photographs and videos from the defendants' phones. Similarly, Special Agent Chen will testify about various social media exhibits obtained from defendant Sturgeon's Facebook and Instagram accounts. Special Agent Chen will also introduce certain videos or photographs obtained from other defendants or individuals that depict the defendants, including additional body-worn camera footage and open-source video.

**U.S. Secret Service ("USSS") Inspector Lanelle Hawa** will testify about the USSS' and U.S. Capitol Police's security preparations in anticipation of Congress' proceedings to certify the 2020 Presidential Election on January 6, 2021, and how the breach of the Capitol came to pose a severe threat to the safety of Vice President Pence, who was presiding over the certification, and his wife and daughter, who were also Secret Service protectees that day.

**Kyle Jones** will testify regarding the joint session of Congress to certify the 2020 Presidential Election results. Specifically, Mr. Jones will provide some background on the certification proceeding generally and then speak in more detail of the timeline of the certification proceeding on January 6, 2021. Mr. Jones will introduce the congressional video montage and will also discuss his personal experience on January 6, 2021.

## II.    Stipulations

The parties have agreed to the following stipulations:

1. Authentication of Videos and Photographs Recorded by Third Parties (Government Exhibits 401-413; 1101-1109)

2. Authentication of MPD Body-Worn Camera Footage (Government Exhibits 200 Series)

3. Authentication of USCP Closed Circuit Video Footage (Government Exhibits 100, 601, 703, and 704)

4. Authentication of Electronic Evidence Collected from Defendant Bingert (Government Exhibits 801, 802 and sub-exhibits)

5. Authentication of Electronic Evidence Collected from Defendant Sturgeon (Government Exhibits 803, 804, 1001, 1002, and sub-exhibits)

6. USCP and MPD officers were "officers and employees of the United States" engaged in their official duties on January 6, 2021

7. Authentication of Senate and House Recording Studio Video Footage (Government Exhibit 501)

8. Identification of Defendant Bingert on January 6, 2021

9. Identification of Defendant Sturgeon on January 6, 2021

## LEGAL AND EVIDENTIARY ISSUES

### I.      Evidentiary Issues

The government anticipates several evidentiary issues, including the admissibility of potential hearsay evidence, authentication of video evidence, general evidence of the riot and request for judicial notice.

### A.      Hearsay Issues

#### 1.      Defendants' statements under Rule 801(d)(2)

The government intends to introduce a number of defendants' statements under Federal Rule of Evidence 801(d)(2), which defines an "Opposing Party's Statement" as non-hearsay.  Fed. R. Evid. 801(d)(2).  These statements will be those that Bingert or Sturgeon made to witnesses, or in text messages, social media posts, or videos. Fed. R. Evid 801(d)(2)(A).

While these statements are admissible when offered by the government, the defendants' statements are inadmissible hearsay when offered by the defense. The Rule of Completeness does not serve as an alternate basis for introduction of defendants' statements, either. *See* Fed. R. Evid. 106 (permitting introduction of defendant statements by the defense "to permit such limited portions [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence"). Thus, the rule only allows a defendant

to introduce his own statement when, without that context, the other statements would be misleading. *See United States v. Griffith*, No. 21-CR-244-2 (CKK), 2023 WL 2043223, at *5 (Feb. 16, 2023) (granting motion *in limine* to preclude defendant from introducing his own hearsay statements).

2.    **Statements offered not for their truth, but for their effect on the listener**

The government will offer statements by other rioters that are not hearsay but are being offered to show the effect on the listener, namely the defendants. For example, the government may offer statements by other rioters near one or both of the defendants at the U.S. Capitol to show that defendants knew that the purpose of the mob that they joined was to interrupt the certification proceeding going on inside the U.S. Capitol building. *See* Fed. R. Evid. 801(c)(2) (defining hearsay as "evidence to prove the truth of the matter asserted in the statement.").

3.    **Statements offered not for their truth, but as context**

The government will introduce certain statements by declarants other than the defendants, in texts or videos relevant for other reasons, not for their truth, but as context or relevant background.  For example, the government may introduce text and/or social media messages between the defendants and others.  These conversations will not be offered for their truth, but as necessary context to understand the defendants' replies.

B.    ***Bruton v. United States***

The government does not intend to introduce any post-arrest statements by either defendant in this case.

C.    **Authentication Issues**

The government expects to authenticate four categories of photographs and videos: (1) Capitol CCTV; (2) photographs and videos obtained through open-source investigation; (3) body-

worn camera footage; and (4) photographs and videos from defendant's cellular phones and/or social media accounts.

The parties have agreed to stipulate to the authenticity of each of these categories of evidence, as set out above.

### D.      General evidence of the Capitol riot

The government will introduce evidence of the events at the U.S. Capitol on January 6, 2021, even beyond those in the immediate vicinity of the defendants.  This evidence will include:

1.  An overview U.S. Capitol Police witness, Captain Ronald Ortega, who will testify regarding the crowd's initial breaches of the barriers marking the U.S. Capitol's restricted area and the crowd's progress in pushing through police lines before ultimately entering the U.S. Capitol itself, as well as law enforcement's hours-long struggle to clear the U.S. Capitol grounds of rioters;

2.  A timelapse video of U.S. Capitol Police CCV footage of the breach of the West Front of the U.S. Capitol;

3.  An overview montage of U.S. House and Senate footage depicting the certification of the 2020 Presidential Election;

4.  A former Congressional employee witness, Kyle Jones, who will testify about the certification proceeding generally, the timeline of the proceeding on January 6, 2021 and his personal experience on January 6, 2021.

5.  A U.S. Secret Service witness, Inspector Lanelle Hawa, who will testify to the presence and movements of the Vice President, Michael Pence, at the U.S. Capitol on January 6, 2021.

The government does not allege that either of the defendants entered the U.S. Capitol building on January 6, 2021.  However, evidence of the overall riot and its progression that day,

including limited evidence of the breach into the Capitol building, is relevant to at least three counts.

First, to prove Count One, the government must prove that the defendants or others disrupted or impeded an official proceeding. Thus, background information on the certification proceeding is therefore relevant to whether it was an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). The timeline of the joint session – including the almost six-hour recess as a result of the presence and actions of the mob - is also relevant to prove that the defendants or others[9] disrupted or impeded the official proceeding.

Second, for Count Three, the government must prove that defendants interfered with a law enforcement officer incident to or as a part of a civil disorder and that the civil disorder obstructed, delayed, or adversely affected either commerce or the conduct or performance of any federally protected function. Evidence of the presence of rioters on U.S. Capitol grounds and inside the U.S. Capitol building is therefore relevant to whether a civil disorder existed and whether that civil disorder adversely affected the performance of a federally protected function – namely, the USSS's protection of Vice President Michael Pence and his family and the U.S. Capitol Police's protection of the U.S. Capitol building and grounds.

Finally, for Count Five, the government must prove that defendants' disorderly or disruptive conduct "in fact impeded or disrupted the orderly conduct of Government business or official functions." Thus, the government can offer proof that the riot as a whole——of which defendants were a part—interfered with or stopped the certification and could not resume until all rioters, including the defendants, were cleared from the U.S. Capitol grounds.

---

[9] The defendants are charged with aiding and abetting others disruption of an official proceeding, in addition to attempting to and interrupting the proceeding themselves.

### E. Judicial Notice

The government intends to request that the Court take judicial notice of, and admit into evidence, copies of the Twelfth Amendment, as well as 3 U.S.C. §§ 15-18 relating to the Electoral College Certification Official Proceedings.

## III. Legal Issues

### A. The Verdict Procedure and Factual Findings

The government respectfully requests that the Court render the verdict after closing arguments immediately following the close of evidence, or as soon as practicable thereafter. When delivering the verdict, the government proposes that the Court note the law it is applying to the facts adduced at trial. Judge McFadden, for example, has in the past stated during his verdict that he has adopted the instructions and definitions in the government's trial brief; *see, e.g., United States v. Speed,* No. 22-cr-244 (TNM), 3/7/23 Tr. of Oral Ruling at 2; or the Court could otherwise set out the elements and definitions it is applying. The government does not request specific findings of fact pursuant to Federal Rule of Criminal Procedure 23(c).

### B. Motion to Dismiss Count Seven

The government will move to dismiss Count Seven without prejudice prior to the commencement of trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530

23

IL Bar No. 6316768
(202) 252-6778
Kaitlin.klamann@usdoj.gov

By:     */s/ Courtney A. Howard*
        COURTNEY A. HOWARD
        Trial Attorney, Criminal Division
        Detailed to the U.S. Attorney's Office
        601 D Street NW
        Washington, D.C. 20001
        NY Bar No. 4513909
        202-514-3130
        Courtney.Howard2@usdoj.gov